# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-10057-GW(SSx) | Date | April 7, 2011 |
| Title | BNSF Railway Co., et al. v. U.S. Bureau of Land Mgt., et al. | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Deborah Gackle | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Steven A. Lamb

Attorneys Present for Defendants:

Marissa A. Piropato, USDOJ - by telephone
Rachel Bowen, USDOJ - by telephone
Dennis L. Beck, Jr.

**PROCEEDINGS:**   **STATUS CONFERENCE**

The tentative circulated on Federal Defendants' Motion to Sever Claims in Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 21, filed on March 10, 2011, in CV 11-400-GW(SSx), is adopted as the Court's final ruling (attached). The motion is **granted.** The Court by making this ruling is not attempting to decide any merits and the ruling is made "no harm, no foul" as to all parties on both sides.

Defendants will have until April 29, 2011 to respond to the initial complaint. In the event the Government shuts down due to the budget, the defendant may request the amount of downtime as an extension to respond to the complaint.

Furthermore, this Court determines that the above-entitled action should not be related to the initially filed lawsuit (i.e. Case No. CV 10-9932). Hence, the order under Section 5 of General Order 08-05 to relate the cases to Case No. CV 10-9932 is set aside and it is ordered that this case be returned to the initially assigned judicial officer.

**cc: Low Number Clerk**

:  04

Initials of Preparer   JG

I. *La Cuna de Aztlan Sacred Sites Prot. Comm. v. U.S. Department of the Interior*
   Case No. CV-11-0400 - Tentative Ruling on Motion to Sever

II. *California Unions for Reliable Energy v. U.S. Department of the Interior*, Case No. CV10-9932; *BNSF Railway Co. v Bureau of Land Management*, Case No. CV-10-10057; *La Cuna de Aztlan Sacred Sites Protection Circle Advisory Comm. v. U.S. Dep't of Interior*, Case No. CV-11-0395; *La Cuna de Aztlan Sacred Sites Protection Circle Advisory Comm. v. U.S. Dep't of Interior*, Case No. CV-11-0400; *Western Watersheds Project v. Salazar*, Case No. CV-11-0492 - Tentative Ruling on Status as Related Cases under General Order 08-05

**OVERVIEW**

On December 27, 2010, the plaintiffs in California Unions for Reliable Energy v. U.S. Department of the Interior, CV10-9932-GW(SSx) ("CURE") filed their Complaint for Declaratory and Injunctive Relief against the United States Department of the Interior, the Bureau of Land Management, Ken Salazar, Robert Abbey, Teri Raml, and John Kalish (collectively, "Interior") challenging Interior's approval of a right-of-way and amendment to the California Desert Conservation Area ("CDCA") Plan for construction of the Genesis Solar Energy Project ("Genesis") on approximately 1,950 acres of public lands. Thereafter, four additional lawsuits were filed against the United States Department of the Interior and other defendants in the United States District Court for the Central District of California challenging the federal and state approvals of the following solar energy power plants:

(1) La Cuna de Aztlan Sacred Sites Prot. Comm. v. U.S. Dep't of Interior, CV11-400-GW (Ssx) ("La Cuna II"),[1] challenging (in the current operative complaint) the Genesis project, the Blythe Solar Power Project ("Blythe"), the Calico Solar Project ("Calico"), and the Ivanpah Solar Electric Generating System Project ("Ivanpah");

(2) La Cuna de Aztlan Sacred Sites Protection Circle Advisory Comm. v. U.S. Dep't of Interior, CV11-395-GW (Ssx) ("La Cuna III"), challenging the Chevron Energy

---

[1] Plaintiffs in La Cuna II previously brought a virtually identical action in the Southern District of California, La Cuna de Aztlan Sacred Sites Protection Circle Advisory Committee v. U.S. Department of the Interior, No. 3:10-cv-2264 WQH-WVG ("La Cuna I"). In La Cuna I, Plaintiffs challenged, in addition to the the four projects now at issue in LA Cuna II, the Imperial Valley Solar Project ("Imperial Valley") and the Chevron Lucerne Solar Project ("Lucerne"). See Declaration of David B. Glazer in Support of the Federal Defendants' Motion to Sever ("Glazer Decl."), Exh. A. On January 25, 2011, the Plaintiffs voluntarily dismissed their claims in La Cuna I against all projects except the Imperial Valley Project, which remains pending in the Southern District. In addition, two other actions are being litigated in the Southern District against the Imperial Project, i.e. Quechan Tribe of the Fort Yuma Reservation v. U.S. Dep't of Interior, No. 3:10-cv-2241 LAB-CAB, and Protect our Communities v. Salazar, No. 3:11-cv-124 LAB-CAB

Solutions Lucerne Valley Solar Energy Project ("Chevron")[2];

(3) Western Watersheds Project v. Salazar ("Western Watersheds"), CV11-492-GW (Ssx), challenging the Ivanpah project, and

(4) BNSF Railway Co. v Bureau of Land Management, CV10-10057-GW (Ssx) ("BNSF"), challenging the Calico project.

This Court provisionally transferred the four additional cases to its docket as related to the CURE case pursuant to General Order 08-05. On February 23, 2011, the Court held a telephonic status conference and asked the parties in the five matters to brief two issues: (1) whether the five cases are related pursuant to General Order 08-05, and (2) whether the defendants in the La Cuna II case were properly joined under Rule 20 of the Federal Rules of Civil Procedure.

**MOTION(S) TO SEVER**

Plaintiffs' original complaint in La Cuna II concerned only the Ivanpah project. The First Amended Complaint ("FAC"), filed February 8, 2011, challenges four separate solar projects and names as defendants the project proponents of the four proposed plants (i.e., Genesis, Blythe, Calico, and Ivanpah): Claims 1-5 and 21 challenge the Ivanpah project, Claims 6-10 and 22 challenge the Genesis project, Claims 11-15 and 23 challenge the Calico project, and Claims 16-20 and 24 challenge the Blythe project. In paragraph 7 of the FAC, Plaintiff alleges that each of the projects has a separate and distinct approval, and resulted in a separate and distinct amendment to the California Desert Conservation Area ("CDCA") Plan.

On March 10, 2011, the parties in La Cuna II filed responses to the Court's request for briefing. Federal Defendants U.S. Department of the Interior, Bureau of Land Management ("BLM"), Kenneth L. Salazar, Robert Abbey, Teri Raml, John Kalish, Rusty Lee, and Roxie Trost (hereinafter, the "Federal Defendants") filed a motion to sever. Defendant Genesis Solar LLC filed a separate memorandum supporting an order striking the FAC. Defendants BrightSource Energy, Inc. (BrightSource), Solar Partners I, LLC, Solar Partners II, LLC and Solar Partners VIII, LLC (the Ivanpah project sponsors),[3] and Palo Verde Solar I, LLC submitted memoranda in support of severance. Defendant Calico Solar, LLC filed a joinder in the other Defendants' submissions. The La Cuna II Plaintiffs (hereinafter, "Plaintiffs") filed a memorandum in which - even though they urge that joinder was proper - they essentially concede that the claims should be severed.[4]

---

[2] Although arguably the lower-numbered case in this District should have been designated "La Cuna II," this memorandum adopts the designations used in the Federal Defendants' motion.

[3] Each of the Solar Partner entities are wholly owned subsidiaries of BrightSource.

[4] As the Genesis Defendants note, any potential argument that the La Cuna II Plaintiffs might make that argue that joinder is proper in this case would be seriously undermined by the fact that they filed a separate action, La Cuna III, against the Chevron Project, even though all of the same supposed reasons for joinder in this action are equally applicable to La Cuna III.

The only parties to actively support joinder are the plaintiffs in the CURE case,[5] who separately challenged the Genesis Project, and who have included a section on the joinder issue in their brief urging the Court to relate all of the cases. As the CURE plaintiffs are not parties to the La Cuna II action, it probably is not appropriate for the Court to consider their position on the issue of the joinder of various defendants in this action, even though the Court would note that the joinder issue obviously impacts the Court's determination of whether all of the cases are related.[6]

**Legal Standard**

Federal Rule of Civil Procedure 20(a) permits joinder of two or more defendants in one action if two requirements are met: (1) the right to relief asserted against each defendant must arise out of the same transaction or occurrence, or series of transactions or occurrences, and (2) a question of law or fact common to all the parties must arise in the action. See Fed.R.Civ.P. 20(a). Rule 21 provides the remedy for misjoinder. See Fed.R.Civ.P. 21. "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance. [Citations]. In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs 'against some or all of the present defendants based on the claim or claims attempted to be set forth in the present complaint.' [Citation]." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). "Courts have broad discretion to sever under Rule 21." Golden Scorpio Corp., 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009) (citing Coleman v. Quaker Oats Co., 232 F. 3d 1271, 1297 (9th Cir. 2000)). Even where parties are properly joined under the permissive joinder rule, "the prevailing rule . . . is that a finding of misjoinder is not a prerequisite to severing parties or claims under Rule 21." Acevedo-Garcia v. Monroig, 351 F.3d 547, 560 n.5 (1st Cir. 2003).

**Analysis**

Even if the Court were to consider the arguments of the CURE plaintiffs, it would still conclude that there was improper joinder in the La Cuna II action.

In addition to suing the Federal Defendants, Plaintiffs in La Cuna II have brought claims against various individual entities or groups of entities associated with distinct projects. Each of the challenged projects is located at a different site in Southern California, and each project was reviewed and approved on its own unique set of facts and circumstances. In addition, each of the

---

[5] By contrast, the plaintiffs in Western Watersheds filed an opposition to the joinder or consolidation of the five solar project challenges pending in this District.

[6] As the Federal Defendants note in their severance motion, if the Court dismisses the FAC in La Cuna II with leave to re-file separate actions against individual parties, the separate claims against the Genesis Project would almost certainly be low-numbered to this Court. It also seems likely that the Western Watersheds action would be low-numbered to the La Cuna II action, as both actions involve challenges to the Ivanpah project.

challenged solar projects was initiated by a separate project sponsor filing a separate application for rights-of-way over public land in three different BLM field offices (Palm Springs for the Genesis Solar and Blythe Solar projects; Needles for the Ivanpah project; Barstow for the Calico Solar project). The applications were reviewed and analyzed in four separate Environmental Impact Statements, and approved by the BLM in four different decision documents. As noted by the BrightSource Defendants, resolution of the issues raised in the LaCuna II FAC will require the Court to review a separate and distinct administrative record developed by the BLM for each of the approved solar projects. Therefore, "joining the projects into a single lawsuit will needlessly complicate the court's review of the four challenged solar projects and delay the ultimate resolution of the challenges to each of the projects." BrightSource Motion 2:14-19.

Although Plaintiffs make similar challenges against all of the solar projects, it is not enough to simply raise the same legal claim against all defendants. As stated in Coughlin v Rogers, 130 F. 3d 1348 (9th Cir. 1997), the "same transaction" requirement, for the purposes of Rule 20(a), "refers to similarity in the factual background of a claim." Id. at 1350. "The mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact." Id.

In arguing that joinder was proper, the CURE plaintiffs largely rely on League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 558 F.2d 914 (9th Cir. 1997). There, the Ninth Circuit reversed the dismissal of private developer-defendants in a suit brought by environmental plaintiffs challenging a regulatory agency's approval of development plans. See id. at 917-18. As the Federal Defendants argue, at most that case stands for the proposition that claims against a project proponent as to a particular project might be properly joined with claims against the Federal Defendants. It does not stand for the proposition that claims against different project proponents as to different projects may be joined in the same action.

Even if the La Cuna II Plaintiffs' claim concerning violations of the National Environmental Policy Act (NEPA) provides an element of commonality among all of the actions, it still would not be a basis for finding that all of the defendants have been properly joined. Plaintiffs' NEPA claim is based on Defendants' supposed failure to prepare a Programmatic Environmental Impact Statement (PEIS) for all four projects. As the Federal defendants note, however, the individual project proponent defendants have no responsibility for preparing any PEIS, so there is no legitimate overarching claim that can be brought against those parties arising out of any purported series of "transactions or occurrences." The mere fact - that a single claim might be made against the Federal Defendants that involves all of the projects at issue (and this point is at best debatable) - does not justify naming all of the project proponent defendants.

Rule 18, governing joinder of claims, provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed.R.Civ.P. 18. As the Federal Defendants note, Rule 20(a)(2)(A) limits the reach of Rule 18. Thus, "[d]espite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." 7 Wright, Miller & Kane, Federal Practice and Procedure § 1655, at 420–21 (3d ed. 2001). The NEPA claims cannot plausibly be asserted against the project proponents, so they cannot be used as a basis for suing multiple project

proponent defendants in a single action.

Considerations of "effective case management and administrative efficiency" also warrant severance in the La Cuna II action. Coalition for a Sustainable Delta v. United States Fish & Wildlife Serv., 2009 U.S. Dist. LEXIS 111743 * 23 (E.D. Cal. Nov. 17, 2009); see also Khanna v. State Bar of California, No. C-07-2587 EMC, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007) ("[Rule 21] authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons . . . .") (quoting Wyndham Assoc. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968)) (alterations in original, internal quotes omitted); Acevedo-Garcia, 351 F.3d at 560 n.5 (severance of multi-plaintiff action to ease burden on jury). As several of the Defendants observe, each of the challenged projects will have a separate administrative record, and the reviewing court will be required to consult the particular administrative record for each of the projects in order to reach a decision on the merits of the various claims contained in the First Amended Complaint. If considered together, then the schedule for hearing the merits of the claims will be dictated by the date the last administrative record has been filed. It will be more efficient to consider each of the challenged projects separately.

**Conclusion**

For the reasons set forth above, the Court would issue an order dismissing the claims in the LaCuna II Plaintiffs' First Amended Complaint pertaining to all but the Ivanpah project, with leave to refile their claims against the other projects as separate actions, and returning the remaining challenges as to the Ivanpah project to Judge Dolly Gee to whom the case was originally assigned. The Court would reject Plaintiffs' suggestion of a "compromise" in which the claims against each project would be ordered transferred to the district judge's docket in which a lawsuit concerning the project was previously pending. While that result may be the ultimate outcome of this Court's decision, Plaintiffs have not provided the Court with any authority suggesting that this Court has the power to make such an order.

**GENERAL ORDER 08-05**

While the claims as to the four individual projects challenged in the La Cuna II action are obviously related to the corresponding claims against the respective projects brought in the separately filed actions, it is clear, based on the above discussion, that the four cases that the Court ordered provisionally transferred to its docket - i.e., the La Cuna II, La Cuna III, Western Watersheds, and BNSF should not be related to the CURE action pursuant to General Order 08-05.

Section 1.2 of that General Order provides that "[t]he assignment of civil cases shall be completely at random . . . . The assignments shall be such that each active judge of the Court, over a period of time, shall be assigned an equal number of cases." Section 5.0 of General Order 08-05 makes an exception to the random assignment rules where two or more cases are deemed "related." As the Federal Defendants acknowledge, Section 5.1.1 sets forth a standard of "relatedness" that is not as stringent as that in Rule 20(a). Under Section 5.1.1, cases may be deemed "related" where they:

    a.    arise from the same or a closely related transaction, happening or event; or

      b.    call for determination of the same or substantially related or similar questions of law and fact; or

      c.    for other reasons would entail substantial duplication of labor if heard by different judges; or

      d.    involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

Only the CURE plaintiffs and the BNSF plaintiffs argue that the five pending solar cases are all related to one another, and both arguments are premised upon the assumption that the joinder of multiple defendants and claims in the LaCuna II FAC was proper. However, the La Cuna II Plaintiffs' attempt to assert challenges to five separate solar projects in a single action is both improper and unworkable. As the Federal Defendants observed, such a tactic not only prevents the random assignment of what should be individual actions, but also (by more or less having required this Court to have ordered the transfer of all of the actions and then make a provisional order in a case that for all intents and purposes should not have been before it) inhibits the proper functioning of the Court's related case provisions. Indeed, at least some of the Defendants suggest that the La Cuna Plaintiffs' actions - i.e., filing two separate complaints in this District, and then waiting until after the cases were assigned to amend one of the complaints to bring challenges against other solar projects - suggests that they were judge shopping.

As discussed above, the mere fact that Plaintiffs in the La Cuna II action are challenging the Federal Defendants' alleged failure to prepare a Programmatic Environmental Impact Statement (PEIS) for all four projects does not provide a basis for joinder of the proponents of all of the individual solar projects. Assuming that the Court adopts the above recommendation to order the claims challenging all but the Ivanpah project in La Cuna II to be re-filed as separate actions, nothing in General Order 08-05 would compel a finding that the five actions that are now provisionally before the Court are related to one another. Rather, considerations of judicial efficiency and fairness suggest that they should be returned to the courts to which they were originally assigned.

**CONCLUSION**

The Motion(s) to Sever in the La Cuna II action would be granted, and the La Cuna II, La Cuna III, Western Watersheds, and BNSF actions would be returned to their originating courts.